[No. 1953]

# THE STATE OF NEVADA, EX REL. EDWARD C. JENNETT, PETITIONER, v. THERON STEVENS, RESPONDENT.

1. PUBLIC LANDS — DISPOSAL BY UNITED STATES — TOWNSITES — "TOGETHER WITH."

Under Comp. Laws, 345, providing that, after the issuance of a patent on townsite land, the corporate authorities or judge to whom the patent shall issue shall execute to the persons entitled thereto, a deed in fee simple for such lots on payment of their due proportion of the purchase money, together with their proportion of such sum as may be necessary to pay for the streets, alleys, squares, and public grounds, not to exceed 50 cents for each lot, etc., the words "together with" show that the limitation of 50 cents was the maximum that could be apportioned to buy all the land within the townsite, inclusive of that within the streets, alleys, squares, and public grounds, and does not apply merely to the amount for the streets, alleys, squares, and public grounds.

2. PUBLIC LANDS — DISPOSAL BY UNITED STATES — TOWNSITES — "INCLUDING."

Under Comp. Laws, 345, authorizing a townsite trustee before issuing a deed of lots to receive for counsel fees, and for moneys expended in the acquisition of the title and for the administration of the trust, including reasonable charges for time and services while employed in such trust, not exceeding the sum of $1 for each lot, the word "including" shows that the charges for time and services of the trustee were to be embraced within the maximum charge, which was also to be inclusive of counsel fees and for moneys expended in the acquisition of the title and the administration of the trust.

3. PUBLIC LANDS—DISPOSAL BY UNITED STATES—TOWNSITES—FEE FOR SURVEY.

In Comp. Laws, 349, relating to the disposal of townsites, on the public lands of the United States, providing that, where it shall become necessary in the opinion of the citizens of the town to make a survey of any townsite to identify or locate the lots, squares, streets, or alleys, a fee shall be paid to the trustee to defray the expenses of the survey, there being no provision for obtaining an expression of opinion on the part of the citizens as to necessity for a survey, a claimant, who not only fails to show that the charge made by the trustee for a survey is illegal, but who relies on the survey made by him, will not be heard to question its validity as affecting the right of the trustee to compensation therefor.

4. JUDGES—COMPENSATION—"FEES OR PERQUISITE OF THE OFFICE OF DISTRICT JUDGE."

Though a townsite trustee became such by virtue of his office as district judge, the compensation allowed under the

statute for his services as trustee is not a fee or perquisite of the office of district judge within section 10, article 6, of the constitution, forbidding a judicial officer, other than justices of the peace or city recorders, from receiving to his own use any fees or perquisites of office.

5. OFFICERS—ELIGIBILITY—HOLDING OTHER "OFFICE."

The position of townsite trustee is not an office within the provision of the constitution prohibiting a judge from accepting any office other than a judicial office during the term for which he is elected.

6. JUDGES—DISPOSAL BY UNITED STATES—TOWNSITES—COMPENSATION OF TRUSTEE.

Since the duties of townsite trustee do not naturally belong to the office of district judge, and it is not incumbent upon a district judge to accept such trust, he may accept compensation for his services as trustee.

7. PUBLIC LANDS—DISPOSAL BY UNITED STATES—TOWNSITES—PUBLICATION OF NOTICE.

Under Comp. Laws, 341, providing that the townsite trustee within ninety days of the receipt of a patent for the townsite shall give public notice thereof in a newspaper in the county in which the town shall be situated, it is not open to a lot claimant who files application for a lot in pursuance of a notice published on the receipt of a receiver's duplicate receipt from patent land office before the issuance of the patent to question the sufficiency and regularity of the notice.

8. PUBLIC LANDS—DISPOSAL BY UNITED STATES—TOWNSITES—COMPENSATION OF TRUSTEE.

Under Comp. Laws, 349, requiring a fee of ........ cents for each lot to be paid to the trustee to defray the expenses of the survey of the townsite, the maximum fee for each lot is $1.

9. MANDAMUS—SUBJECTS OF RELIEF—ACTS OF OFFICERS.

Though a writ of mandate would lie to compel a townsite trustee to make a deed to a claimant, as required by Comp. Laws, 345, on payment of the maximum amount which the trustee could impose, where the tender is of a less amount, the writ will not lie.

ORIGINAL PROCEEDING. Application for writ of *mandamus* by the State, on the relation of Edward C. Jennett, against Theron Stevens. **Denied.**

The facts sufficiently appear in the opinion.

*James K. Redington,* for Petitioner:

The act of February 20, 1869 (Comp. Laws, 339–347), the general state act covering the execution of townsite trusts, contains no provision whatever for any survey of

the townsite lots.   Examined to its last analysis it resolves itself into the proposition that the trustee, after receiving patent, shall deed to each and every person shown to be an occupant or possessor, the land actually occupied or possessed as a townsite lot or townsite property, no matter what its size.   The necessity for the survey under this act does not even seem to have been considered of the slightest importance.

The act under which the survey in the case in question was supposed to be made, is that of March 8, 1871 (Comp. Laws, 348–350).   The second section of that act (Comp. Laws, 349) provides for a survey in certain cases, but expressly limits it to instances where it shall become necessary "in the opinion of the citizens of the town."   In that event survey can be made and charged up pro rata against lots.

In the case at bar it is expressly conceded, and is an established fact, that the survey, in respect to which the trustee has appropriated $1.12 per lot, was made without the slightest effort to ascertain whether it was necessary "in the opinion of the citizens of the town."   No meeting of citizens was held or called, no effort to ascertain the opinion of the citizens as a bulk was made, and the only pretense in this regard put forward by the defendant is that he made occasional inquiries of people who came into his office whether they did not think a survey might be necessary.   It is obvious, without the slightest argument, that this survey was made without any authority whatever in law, and that not one cent expended therein or therefor can properly be charged up against any of the lots, blocks, squares or holdings.   The provision, that the survey shall be made only when it shall become necessary in the opinion of the citizens of the town, renders it absolutely essential that the validity of any survey made under the act depends at the very outset on whether the survey was made after the opinion of the citizens of the town had been ascertained in some proper and legitimate manner.   It goes without saying that this survey,

no matter how convenient it may have been, for the purposes of this peculiar administration of the townsite law was absolutely without authority whatever. No charge for making the same can be properly charged up against the lot owners by the trustee, and his express inclusion of the $1.12 against this petitioner, for and on account of that survey, was absolutely illegal and void, and would alone and of itself entitle the petitioner to maintain this action.

If the survey in question, as has been above shown, was unauthorized in law, then any attempt at recording in the office of the county recorder was equally without authority, and the 20 cents per lot charged by the trustee against each of the lots for that purpose was also illegal and void.

The facts surrounding the allowance of the attorney's fee in this case, amounting to the sum of $3.45 against each and every lot shown by the unauthorized survey, shed no luster whatever upon this remarkable execution of the townsite trust. Without going into the facts in detail, it is sufficient to remind the court that the averments of the complaint and answer show that the trustee attempted in the first instance to recognize the preposterous contract made by a few of the original lot owners with one James Donovan, an attorney, for the payment to him of $10 per lot for each and every lot deeded the claimants. By a few fictitious and wholly preposterous references, the total amount, which exceeded the sum of $40,000, was reduced to the vicinity of $15,000, and that $15,000 proportioned against the lots so as to create the $3.45 as an item against every holder.

The only justification for making this reservation and appropriation, or attempted appropriation, of the money of the lot holders is found in the act of 1869 (Comp. Laws, 345), which, so far as the question now under consideration is concerned, need be noticed only so far as to remind the court that after providing for the possibility of counsel fees, in the administration of the trust, the

act includes the following proviso: "*Provided*, that no estimate shall be made for counsel fee unless the same shall have been actually and necessarily expended."

There is no pretense in the answer of the defendant in the case at bar, or anywhere else in any of the proceedings that have grown out of this townsite matter, that this fee, or any portion of it, or a penny of it, was ever actually and necessarily expended. It grew, as hereinbefore stated, out of an abominably extortionate contract between the attorney, James Donovan, and certain lot owners or claimants. The trustee found that contract and adopted the same as the basis of misappropriating the funds of the lot owners. He actually paid out, as funds began to accumulate, the sum of $1,000 upon this illegal fee, but there had never been, actually or otherwise, the expenditure of a dollar by himself or anybody else, in respect to this matter, up to the payment of that sum of $1,000 to Mr. Donovan.

This item of $3.45, without necessity for the slightest argument, must be held and considered as absolutely unauthorized by the law, and as an attempt to appropriate money unwillingly forced from the lot owners, and the payment of a so-called attorney's fee illegal in law and, as the papers show, never in fact earned.

The papers show that of the total sum of $9.50, demanded of your petitioner, $3 thereof constituted an allowance made by the trustee to himself under the item of section 345 of the Compiled Laws for executing and acknowledging the deeds.

There might have been, and there was, some question as to whether an item of this character was not permissible in favor of the trustee prior to the decision of this court in the case of *Jennett* v. *Stevens*, 33 Nev. 527, in which the opinion of the court by Chief Justice Norcross was filed December 9, 1910. By that decision, however, it was expressly held that respondent, in the case at bar, while discharging the duties of the townsite trust, was acting judicially, and as such was not subject to the orders or the mandates of the district judge. The

opinion of the court in that case is exceedingly full and explicit, and expressly holds that all of the acts performed by the trustee in the execution of the trust were judicial and not ministerial.

Taking that conclusive decision of this court as settling that question, then under the constitution of Nevada the trustee was not entitled and was in fact prohibited from receiving to his own use any fees or perquisites of the office whatsoever.     (State Const., art. 6, secs. 10, 11.)

Section 11 expressly provides that the justices of the supreme court and the district judges shall be ineligible to any office other than a judicial office, during the term for which they shall have been elected, and section 10 provides that no judicial officer except a justice of the peace and a city recorder shall receive to his own use any fees or perquisites of office whatever.     It is obvious from the very reading of this provision of the constitution that the retention of the sum of $3 by the trustee for his own benefit, was an express violation of the highest law of the land, and, if there ever was any doubt on that subject, it is resolved by the decision of this court in *Jennett* v. *Stevens*, above noted, declaring that the trustee in this particular instance was a judicial officer and acting judicially in respect to all of his duties.

Besides other less important items which by the record are shown to have been improperly assessed against the lot owners by the trustee there are, as above specifically discussed, the following four items: Survey fee, $1.12; recording fee, 20 cents; attorney's fee, $3.45; trustee's perquisites, $3; total, $7.77.

It therefore conclusively appears from the record in the case that the sum of $9.50 assessed against the lot of petitioner in this case was at least $7.77 in excess of everything authorized by law.     When, therefore, the petitioner, under the advice of counsel, supposing the possible fees to be larger, tendered to the trustee the sum of $4.50 for the delivery of a deed, he tendered a much larger sum, at least $3.20 in excess of any amount which could properly be charged against his lot.     The refusal of

the trustee to deliver him his deed upon this tender was obviously a violation of law, which can be corrected by this court in the ordinary process of *mandamus* and in the case at bar.

As the question is not one of single importance, presented by any one individual, it is a matter much to be desired that the supreme court, in deciding the case at bar, may intimate and pass upon the proper amount which may be charged in respect to the above contested items, and by such a decision only can matters between the trustee and the lot owners be authoritatively settled.

We accordingly submit that the preliminary writ of *mandamus* issued in the case at bar should be made perpetual, and that by such final writ the trustee should be demanded to deliver to the petitioner the deed for his lot for such amount as may be legally due therefor under the law of that case.

*Detch & Carney*, for Respondent:

The respondent contends that the power vested in the trustee to determine the fees and charges that should be paid by the appellant as a condition precedent to receiving his deed, is a discretionary power, and, as shown by the petition in this case, such discretion has been fully exercised by the trustee.

"Whenever a discretionary power is vested in officers and they have exercised that discretion, the courts will not interfere, because they cannot control, and ought not to coerce that discretion." (*McDougal* v. *Bell*, 4 Cal. 177; *Jacobs* v. *Supervisors*, 34 Pac. 630; *People ex rel. Gesford* v. *Superior Court*, 46 Pac. 383; *Greenwood Land Co.* v. *Rout*, 17 Colo. 156.)

Decisions of trustees judicial in character: "The declaration of all questions whether of law or of fact upon which depends the ultimate question whether the claimant of a townsite is entitled to entry and to receive the patent for the land, is judicial in its nature, and impervious to any collateral attack and can only be assailed successfully by a direct proceeding in equity for that

purpose." (*King* v. *McAndrews*, 111 Fed. 860; *Learned* v. *Jenkins*, 113 Fed. 634; *Smith* v. *Pipe*, 3 Colo. 187; *Anderson* v. *Bartels*, 7 Colo. 256; *Horskey* v. *Moran*, 21 Mont. 345.)

In the case of *Anderson* v. *Bartels, supra,* the Supreme Court of Colorado uses the following language: "Where no defect of title or authority exists and the land is subject to sale, it is held that the officers of the land department, in the course of their duties, exercise a judicial function, and their acts cannot be impeached in a collateral action; and in this case hold that the duties and powers of the probate judge were not merely ministerial, but in executing the provisions of the congressional and legislative acts relating to the ground, he was called upon to and required to exercise judicial discretion and powers."

In the case of *Hoole* v. *Kinkead,* 16 Nev. 217, our own supreme court, on page 222, uses the following language:

"For it is settled beyond controversy that, where the plaintiff is against a person or body that has a discretionary or deliberative function to exercise, and that person or body has exercised that function, according to the best of his or its judgment, the writ of *mandamus* will not be granted to compel the undoing of that which has been done. * * * A subordinate body can be directed to act, but not how to act, in a matter as to which it has the right to exercise its judgment; and, where it is vested with power to determine a question of fact, the duty is judicial, and, however erroneous its decision may be, it cannot be compelled by *mandamus* to alter its determination. Such has been the uniform decision of this and other courts."

It is alleged the respondent as trustee is prohibited from receiving any fees, commissions or other compensation for his services, under article 6, section 10, of the constitution of the state, which reads: "No judicial officer, except justices of the peace and city recorders, shall receive to his own use, any fees or perquisites of office."

Under section 2387, U. S. Rev. Stats., the judge of the district court is the person designated to act as the trustee. As trustee he is not an officer under the constitu-

tion or the statutes of this state. The fees designated in section 345 of the Compiled Laws are not fees or perquisites of the office of judge. For the additional duties in administering the trust, the legislature has properly said that, as trustee, he should receive the compensation given by the statute.

It is submitted that the construction which the petitioner desires to place upon article 6, section 10, is too restricted. Said section was doubtless intended to prevent the taking of fees or compensation for duties naturally belonging to the office of district judge. This question has been passed upon by the court on a similar contention under other sections of the constitution. (*State* v. *LaGrave*, 23 Nev. 373; *State* v. Atchinson, 19 Nev. 332.)

The legislature of this state passed an act to provide for revising, compiling, annotating and publishing the laws of the State of Nevada and making an appropriation therefor. Section 1 of said act designated the justices of the supreme court the commission for that purpose. This act imposed upon the justices great additional and tedious work extending over a period of two years. Can it be seriously contended because of these additional labors, not naturally belonging to the office, that they were receiving fees and perquisites of office, and therefore in violation of article 6, section 10, of the constitution? We submit not.

It is alleged in the answer that the petition is not presented in good faith; that petitioner and one George B. McDevitt and others conspired and agreed to make application for the writ. The letters and contract written and circulated by Schloss and McDevitt on the very day this respondent was to make his return to the order to show cause, is *prima facie* evidence of bad faith.

The very contract itself is unconscionable. The lot owner must agree to give up 50 per cent of what is claimed to be excessive, being $8, or $4 to each lot owner.

These parties are openly soliciting and instigating litigation and that for the purpose of inducing each lot owner

to relinquish the sum of $4 on account of these services. It does appear very, very strange that, with all the dissatisfied lot claimants, as alleged by the petitioner, the petitioner in the prohibitive case is the wife of one of the firm circulating these letters, and the petitioner herein has been induced by them to become the petitioner. It does not appear that these parties are lot owners or that they have any interest in any matters growing out of the trusteeship, and it must be presumed that if they are directly interested as lot claimants, that they would be making the application to the court for redress. It is apparent that their only interest is to solicit lot claimants, for the purpose of instigating litigation, with the delusive hope that they may obtain a little easy money.

It would seem to reasonable people that, if the trustee had made charges which were not allowable under the statute, he would be responsible therefor, and would have to refund the excess, and a proper proceeding, brought in good faith, would determine the entire matter. (26 Cyc. 150, and cases cited.)

It is argued in the Schloss case that all the acts of the trustees were and are void, and therefore the writ of prohibition should be granted, while in this case, under the same set of facts, the petitions having been prepared by the same attorney, this court is asked to grant the writ of mandate.

If the proposition in the Schloss case is good, the acts of the trustee being void, how can petitioner's attorney ask the court to compel the doing of a void act in this case? Certainly the positions are so inconsistent that it is apparent that the mind of the pleader was in such doubt that he took both horns of the dilemma, and is relying upon the court to find a proper solution of the question.

*Per Curiam:*

This is an original proceeding in *mandamus* to compel the respondent, as trustee of the Goldfield townsite, to execute and deliver to plaintiff a deed to a certain lot

within said townsite upon the payment of the sum of $1.50, or a sum not greater than $4.50, which latter amount is alleged to have been tendered by the petitioner to the respondent. Prior to January 1, 1911, the respondent was one of the two district judges of the Seventh Judicial District. By virtue of his office as such judge, he became trustee of the federal townsite of Goldfield, and in pursuance of law (Comp. Laws, 347) continued to execute the duties of such trustee after the expiration of his term of office.

A number of questions have been raised involving the right of the petitioner to maintain this proceeding, but the importance of the question involved warrants a determination of the main question in controversy, even though the writ might be denied upon other grounds. The main question upon the merits is the amount the respondent, as trustee of the townsite, is entitled to charge claimants for lots within the townsite.

Section 7 of "An act prescribing rules and regulations for the execution of the trust arising under the act of Congress entitled 'An act for the relief of the inhabitants of cities and towns upon the public lands,' approved March 2, 1867," approved February 20, 1869, as amended March 8, 1871, reads as follows:

"SEC. 7. After the issuance of the patent for such lands, it shall be the duty of the corporate authorities, or judge to whom such patent shall issue to make out, execute and deliver, to each person, company, association or corporation who may be legally entitled to the same, a deed in fee simple, for such part or parts, lot or lots, of land on payment of his, her, their or its proper and due proportion of the purchase money for such land, together with his, her, their or its proportion of such sum, as may be necessary, to pay for streets, alleys, squares and public grounds, not to exceed fifty cents for each lot, and also such further sums, as shall be a reasonable compensation for executing and acknowledging such deed not exceeding the sum of three dollars for the first and one dollar for each additional lot claimed by the same owner;

for counsel fee and for moneys expended in the acquisition of the title and the administration of the trust, including reasonable charges for time and services while employed in such trust, not exceeding the sum of one dollar for each lot; *provided,* that, no estimate shall be made for counsel fee unless the same shall have been actually and necessarily expended; and the foregoing charges shall be full payment for all expenses attending the execution except for revenue stamps; *provided,* that, deeds made under the provisions of this act, for the benefit of minors and insane persons, shall be to the guardian or trustee of such minor, or insane person, as the case may be, in trust for such minor or insane person." (Comp. Laws, 345.)

Section 5 of the amendatory act of March 8, 1871 (Comp. Laws, 349), reads as follows: "In all cases where it shall become necessary in the opinion of the citizens of the town to make a survey of any townsite for the purpose of identifying or locating the lots, blocks, squares, streets, or alleys contained within the limits of said townsite, a fee of ____ cents for each lot shall be paid to the trustee to defray the expenses of said survey, which said fee shall be paid by the claimants pro rata."

The two sections above quoted prescribe the amounts ·which the trustee may charge the lot claimants for lots within the townsite, and it is upon a construction of the provisions of these two sections that the controversy arose which has occasioned this proceeding. The total amount which the trustee determined was the proper and lawful charge to be made for each lot within the townsite was $9.50, which amount included the item of $1.12 as a pro rata charge for the survey of the townsite as provided for in section 5, *supra.* It is the contention of counsel for petitioner that the maximum charge which a trustee may make under the provisions of section 7, *supra,* is $4.50.

The relator makes the further contention that the respondent herein is not entitled to make any charge for his personal services by reason of the fact that he became trustee by virtue of his judicial office, and that

he is not entitled to make any charge for the survey of the townsite because of failure upon the part of the trustee. to ascertain the opinion of the citizens of the town that such survey was necessary.

We agree with counsel for petitioner that $4.50 is the maximum charge per lot which a trustee may impose under the provisions of section 7, *supra*. Counsel for respondent contends that the limitation of 50 cents mentioned in the section only applies to the amount which may be apportioned per lot to pay for streets, alleys, squares, and public ground, and that an additional charge may be made for the land exclusive of that comprised within the streets, alleys, squares, etc.

We think the words, "together with," as used in the section show conclusively that the limitation of 50 cents was the maximum amount that could be apportioned to buy all the land within the townsite, inclusive of that included within the streets, alleys, squares, and public grounds. This is not only in accordance with the grammatical construction of the language used, but 50 cents per lot is ample to cover the charge for such purposes. While it is true that lots might be made so large that 50 cents would not be an adequate allowance, yet, if lots are made in a convenient and somewhere near the ordinary size, the amount prescribed is ample. Where the government proceeds to lay out and dispose of a townsite under the provisions of the United States Revised Statutes, section 2382 (U. S. Comp. St. 1901, p. 1455), the maximum size of the lots is prescribed to be 4,200 square feet. A block 360 by 300 feet, allowing for alleys and streets of the ordinary size, would make twenty-four of such lots, approximately eight of such lots per acre. If all of the lots within the townsite were sold, it would net $4 per acre for the land which is purchased from the government at $1.25 per acre. It will therefore be seen that the lots could be made very much larger than the maximum permitted under the section of the federal statute, *supra*, besides making ample allowance for streets, alleys,

and public grounds, and still enable cities to keep within the prescribed limitation of 50 cents.

It is contended by counsel for the petitioner that the maximum charge which the trustee may make for counsel fee for moneys expended in the acquisition of the title and for the administration of the trust, including reasonable charges for the trustee, is $1. It is the contention of counsel for respondent that the limitation of $1 only applies as a limitation upon the charges which the trustee may make for his time and services while employed in the administration of the trust. We think the section of the statute will not bear the construction contended for by counsel for the respondent.

In quoting section 7, *supra,* we have followed the official copy as it appears in the enrolled bill. In printing the statute the printer has not followed the punctuation used in the original. The printed copy contains a comma after the words "for counsel fee," but there is no such comma in the original. The use of the word "including" shows, we think, that the charges for time and services of the trustee were intended to be embraced within the maximum charge of $1 for each lot, which was also to be inclusive of counsel fee and for moneys expended in the acquisition of the title and the administration of the trust. Ordinarily the sum of $1 would be ample to cover all of the purposes mentioned. The corporate townsite embraced 587 acres which was divisible into 4,000 or more lots.

It was doubtless the purpose of the legislature to fix a maximum beyond which the trustee could not go, and at the same time make the same high enough for all ordinary purposes. Prior to the amendment of 1871, the maximum for this purpose was 50 cents per lot. It appears from the answer of the respondent that there was a great deal of litigation involved over the townsite between the citizens and persons claiming portions of the land under mining locations. The trustee allowed $3.45 per lot as a reasonable counsel fee. This may not have

been excessive for the services rendered, but the trustee is governed by the provisions of the statute, and, so far as he is concerned, a fee may not be paid which, together with moneys expended in the acquisition of the title and the administration of the trust and for reasonable charges for the services of the trustee, will exceed $1 per lot. This construction of the section we believe to be in accordance with the plain import of the language used.

The contention of counsel for petitioner that the trustee is not entitled to impose any charge upon the lot claimants to defray the expenses of survey is not well taken, so far as anything appears in this proceeding. There is nothing in section 5, *supra*, or in the statute, providing a method for obtaining an expression of opinion upon the part of the citizens upon the question of the necessity for a survey. It is presumed that the trustee will do his duty, and that he will not cause a survey to be made contrary to the opinion of the citizens of the town. There must of necessity be a survey, and the town divided into lots, streets, alleys, public squares, etc. Whether or not former surveys made by several parties of different portions of land embraced within the townsite would be sufficient cannot be determined in this proceeding. Respondent has set up in his answer ample justification, we think, for making a survey. Accepting his allegations as true for the purposes of the statute, the presumption may properly be indulged in that the citizens of the town, seeking the benefits of the townsite statutes, favored whatever was necessary to carry out the purposes of such townsite. The petitioner not only has failed to make a showing that would warrant us in saying that the charge made by the trustee for the survey is illegal, but it appears that the only survey ever made of the lot here in question was that made by direction of the trustee. Petitioner, while relying on the survey, and claiming its benefits, will not be heard to question its validity.

The contention of the petitioner that the trustee is not authorized to make any charge for services rendered by himself because of the fact that he became trustee of the

townsite by virtue of his office as district judge is without merit. The compensation allowed the trustee under the statute is not a fee or perquisite of the office of district judge, and hence does not come within the prohibition of section 10 of article 6 of the constitution, which forbids a judicial officer, other than justices of the peace or city recorders, from receiving to his own use any fees or perquisites of office.

While the respondent became townsite trustee by virtue of his office as district judge, and while as such trustee certain of his duties were judicial in character and others ministerial, his trusteeship was at all times separate and distinct from his office as district judge. It is not an office within the meaning of the constitution which prohibits a judge from accepting any office other than a judicial office during the term for which he is elected. (*People* v. *Nichols*, 52 N. Y. 484, 11 Am. Rep. 734; *In re Hathaway*, 71 N. Y. 238; *Underwood* v. *McDuffee*, 15 Mich. 366, 93 Am. Dec. 194; *Shurbun* v. *Hooper*, 40 Mich. 504; *U. S.* v. *Germaine*, 99 U. S. 508, 25 L. Ed. 482; *U. S.* v. *Hartwell*, 6 Wall. 385, 18 L. Ed. 830; *Louisville R. Co.* v. *Wilson*, 138 U. S. 501, 11 Sup. Ct. 405, 34 L. Ed. 1023; *Auffmordt* v. *Hedden*, 137 U. S. 310, 11 Sup. Ct. 103, 34 L. Ed. 674; *Bunn* v. *People*, 45 Ill. 397; *Hand* v. *Cook*, 29 Nev. 518.)

The duties imposed by the trust do not naturally belong or pertain to the office of district judge, nor is it incumbent upon a district judge to accept such trust. There is nothing in the constitution forbidding a judge receiving compensation for such services, and it is well settled in principle that he may accept a compensation for such services. (*Crosman* v. *Nightingill*, 1 Nev. 323; *State* v. *LaGrave*, 23 Nev. 373; *State* v. *Laughton*, 19 Nev. 202; *Love* v. *Baehr*, 47 Cal. 364, and authorities cited, *supra.*)

The petitioner sets out alleged irregularities on the part of the trustee in prematurely publishing the notice for applicants to present their claims. The statute provides that the trustee within ninety days after the receipt

of a patent for the townsite shall give public notice
thereof by publication in a newspaper published in the
county in which such town shall be situated. (Comp.
Laws, 341.) The trustee published the notice upon the
receipt of the receiver's duplicate receipt from the fed-
eral land office, without waiting for the issuance of the
patent.   It is well settled that the patent relates back
to the time of the issuance of the duplicate receipt, and
that title virtually passes when such receipt is issued.
The trustee gained time in the execution of the trust by
not waiting for the patent to actually issue.   The peti-
tioner filed his application in pursuance of this notice,
and no injury resulted to him from such publication.   A
lot claimant who files an application for a lot in pursu-
ance of such a notice will not be heard to question the
regularity of the same.   The notice may be irregular,
but it was not void.   It accomplished all the purpose
which a notice, unquestionably regular, could have accom-
plished in so far as all claimants were concerned who
filed application in pursuance thereof.   As to such claim-
ants, the sufficiency and regularity of the notice is not
open to question.

While counsel for petitioner attacked the authority of
the trustee to allow any charge whatever for the survey
under section 5, *supra*, little, if anything, has been said
about the limitation, if any, imposed by that section upon
the amount of the charge.   As it is important not only
for this case, but for the administration of townsites in
the future that all questions touching limitations upon
charges be decided, we think it should be determined
whether the legislature intended to impose a limitation.
as to the charge for the money by the use of the expres-
sion, "a fee of ____ cents for each lot.   We think the
legislature did not contemplate that a charge of more
than $1 should ever be made, hence the use of the sign
and word "____ cents."   The legislature fixed a definite
maximum limitation for all other character of charges,
and we think it was its intention so to do in this case, so
that there might be a definite maximum amount which

should fix the total limitation of charges which could be imposed upon the lòt claimant. In view of the large number of lots involved in most every townsite, there is ample room for a reasonable allowance for the survey within the maximum limit of $1, and this the legislature doubtless considered when it used the terms "____ cents." We do not wish to be understood as holding that a trustee may arbitrarily fix a maximum charge for any or all the various items of charge mentioned in the sections of the statute, *supra*. The duties of his trust require that in every instance he determine a reasonable charge within the limits fixed by the statute.

If it had appeared in this proceeding that the respondent was refusing to execute and deliver a deed to the petitioner upon a valid tender of the maximum amount which the trustee could impose under any state of facts shown by this proceeding, to wit, $5.50, then doubtless the writ of mandate would lie, for the statute imposes a duty upon the trustee to deliver a deed in such cases. (Comp. Laws, 345, *supra*.) It does not appear that the petitioner has made such a tender, and, as the writ will only issue in cases where the petitioner shows a clear legal right thereto, the application for a peremptory writ must be denied.

It is so ordered.