[L. A. No. 4597. Department Two.—September 24, 1918.]

## JAMES DONOVAN, Respondent, v. THERON STEVENS, Appellant.

LEGAL SERVICES—PROCURING TOWN-SITE PATENTS—EXCESS COLLECTION OF MONEY—MISTAKE—INVOLUNTARY TRUST.—In this action by an attorney at law to declare a trust in moneys on deposit in two banks in the name of defendant as trustee, which the plaintiff claimed for services in procuring town-site patents for two Nevada towns, it is held that the evidence shows that the defendant, as trustee for the inhabitants, under mistake as to authority, fixed and collected of lot owners greater attorney's fees than authorized by the statute, and therefore, as to the excess, the defendant, under section 2224 of the Civil Code, was an involuntary trustee for the inhabitants and not for the plaintiff.

APPEAL from a judgment of the Superior Court of San Diego County. W. A. Sloane, Judge. Reversed.

The facts are stated in the opinion of the court.

Geo. B. Watson, Riley & Heskett, and James G. Pfanstiel, for Appellant.

William Ogden, for Respondent.

MELVIN, J.—Defendant appeals from a judgment in favor of plaintiff by which it was determined that three thousand five hundred dollars on deposit with the American National Bank of San Diego, California, in the name of Theron Stevens, trustee, and $4,480.35 on deposit with the John S. Cook & Company Bank of Goldfield, Nevada, in the

name of Theron Stevens, trustee, are held in trust for said plaintiff, James Donovan, and also directing said Theron Stevens, individually or as trustee, to assign, transfer, and set over to said plaintiff all right, claim, and interest therein.

According to the allegations of the complaint plaintiff is an attorney at law, admitted to practice in all the courts of Nevada. In April, 1905, the people constituting the inhabitants of Goldfield, Nevada, and occupants of public lands embraced within the said town of Goldfield and South Goldfield assembled in public meeting and organized the "Squatters' Association of Goldfield, Nevada," for the purpose of procuring and defending an application for the public lands so occupied by them as a town site under sections 2387, 2388, and 2389 of the United States Revised Statutes (Comp. Stats. 1916, secs. 4791–4793), and for the purpose of contesting certain alleged mineral claims purporting to cover some of said lands. By law the judge of the district court of Esmeralda County was constituted trustee for the inhabitants of the town and occupants of the public lands for the purpose of making such application. He made and filed a certain amended application (which had been prepared by plaintiff) for the entry of the lands embraced within Goldfield and South Goldfield, naming respondent in such application as his attorney. About the month of May, 1907, the said "Squatters' Association," in mass meeting assembled, by unanimous vote, authorized a committee then and there named to enter into an agreement with the plaintiff whereby he would undertake as attorney for applicants to procure a town-site patent for the lands embraced within Goldfield and South Goldfield. The inhabitants, on their part, agreed to pay plaintiff ten dollars per lot for the issuance of such patent. There were, approximately, four thousand three hundred lots in the tract involved. Plaintiff prosecuted the applications and contested the mineral claims, fully performing his contract, and in November, 1909, the United States issued a patent to the land embraced within the town site. In January, 1909, defendant was appointed judge of the district court of Esmeralda County and thereafter continued the administration of the trust for the inhabitants of Goldfield and South Goldfield. On the issuance of the patents plaintiff presented his contract for ten dollars a lot to the trustee, who, believing the amount was excessive, suggested a modification

of the agreement, with the result that four arbitrators were appointed, two by plaintiff and two by the trustee, who, after considering the matter thoroughly, determined that the value of plaintiff's services was fifteen thousand dollars, or $3.45 per lot assessed against 4,342 lots. The complaint contains the allegation that "under and by virtue of said compromise and agreement of arbitration and in acceptance of said award said defendant collected from each and every person the sum of three dollars and forty-five cents ($3.45) for each lot, which said defendant issued deeds for up to or about the first of February, 1911, and that there was issued up to the said date and deeds delivered for twenty-six hundred and three (2,603) lots, and that the amount received by said defendant from the recipients of said deeds to and for the use of this plaintiff was the sum of eight thousand nine hundred and eighty dollars and thirty-five cents ($8,980.35), all of which money was paid by the inhabitants and occupants of lands and lots as aforesaid, and by each and every thereof freely and voluntarily for the purposes aforesaid, upon the delivery of the deeds to the respective lot claimants." It is further alleged that in February, 1910, defendant paid plaintiff one thousand dollars but has refused to surrender to him the remaining $7,980.35.

After unsuccessfully demurring to the complaint defendant answered, admitting many of the allegations of the complaint and alleging that after apportionment to each lot of $3.45, defendant, as trustee, assessed that sum against each of the lots, together with all other costs and charges in connection with the execution of his trust, believing he had power so to do under section 7 of an act of the legislature of Nevada (Comp. Laws, sec. 345) prescribing rules and regulations for the execution of a trust arising under an act of Congress (Act March 2, 1867, c. 177, 14 Stat. 541), entitled "An act for the relief of the inhabitants of cities and towns upon the public lands," approved March second, eighteen hundred and sixty-seven. In delivering deeds to the claimants defendant, as he alleged in his answer, demanded, as a condition precedent to said delivery, that the claimants should each pay all costs and charges, including the amount assessed as attorney's fee, which, however, was not separately itemized as such. It is also alleged that after the payment of one thousand dollars to plaintiff by defendant certain actions were brought which

caused defendant to refuse further payments until the courts should determine the respective rights of the plaintiff and the inhabitants of the town site; that by its decision in the case of *Jennett* v. *Stevens,* 34 Nev. 128, [116 Pac. 601], the supreme court of Nevada held that under section 7 of the statute, in accordance with which defendant believed he had been acting, he was not authorized as trustee to assess and receive the fees to be paid over to plaintiff in accordance with the pleaded contract; and that by that decision the maximum charge which could be made by the trustee was $5.50 per lot, which had been collected by defendant as trustee for proper and legal items, exclusive of attorney's fees. The answer also contains allegations that the money on deposit in the state of Nevada is withheld from defendant's possession and control by virtue of an injunction issued in a suit still pending; and that the Nevada courts having assumed jurisdiction and control of the trust and of the fund collected thereunder, the courts of California are without jurisdiction in the matter.

The court found in favor of the plaintiff on all material issues. The theory upon which the learned judge of the trial court decided the case is revealed, we believe, in the findings that defendant collected the aggregate and unitemized sum of $9.50 per lot; "that said money was paid with the understanding that the said defendant claimed a lawful right to demand of said lot claimants the said sum of Three and 45–100 Dollars ($3.45) per lot for the use of plaintiff, and that the plaintiff claimed the right to recover the said sum; that the said defendant then received said money for the benefit of this plaintiff and as a matter of convenience to the parties in interest, and that the collection of said money was not involved within his duties as trustee nor as Judge of the District Court of the State of Nevada in and for the County of Esmeralda, and that he had full power and authority to receive said collections outside of his duties as trustee and judge as aforesaid." To sustain these findings, without which the judgment against the defendant personally—not as trustee, for he is not sued in that capacity—cannot be supported, it is necessary to hold that Judge Stevens acted not in his official and fiduciary capacity under the law of Nevada, but that he collected the fees for plaintiff as the latter's agent. Yet no agency is alleged in the complaint.

It is the theory of respondent (and the superior court accepted that view) that although the supreme court of Nevada, in the interpretation of the statute governing the power of the trustee, has decided, in *Jennett* v. *Stevens, supra,* that "a fee may not be paid which, together with moneys expended in the acquisition of the title and the administration of the trust and for reasonable charges for the services of the trustee, will exceed one dollar per lot," nevertheless an additional sum could be levied and collected by the trustee, because of a collateral contract between the attorney and the lot owners. In pursuance of this theory it is alleged in the complaint that each lot owner freely and voluntarily paid the amount assessed for plaintiff's fee. The court found, however, that a large number of the "assessments" for plaintiff's fees were paid by the lot owners "without protest or objection," but that some of them were paid "under protest and upon the representations by said trustee that the amount would be repaid to such claimants if it should be decided that the collection thereof was unlawful, but the evidence does not disclose what payments or what proportion of the payments, or what proportion of the payments, if any, were so paid under protest or upon objection." Obviously, such amounts as were paid under protest must have been collected by Judge Stevens under color of his official power as trustee, and it does not follow merely because the sums assessed against other lot owners (which did not reveal by itemization the purposes to which the component parts were to be devoted) were paid without protest that, therefore, they were delivered to and received by the trustee not in the supposed execution of the trust, but partly in compliance with a contract involving the payment of larger fees than those allowed by the statute for the services of an attorney.

The court also found "that the evidence does disclose that adverse claims have been made upon said fund now on deposit in Goldfield, Nevada, and a restraining order issued purporting to be on behalf of certain of said lot claimants in the courts of Nevada against the payment of said fund on account of plaintiff's claim for attorney fees."

The court found that the trustee refused to recognize the original contracts whereby plaintiff demanded ten dollars per lot, and that after arbitration which was satisfactory to plaintiff said trustee, pursuant to said arbitration, "*apportioned*

*and assessed''* $3.45 against each lot. There is no pleading nor finding that this modification of the contract was ratified by the lot owners, yet it is found that they paid the exaction, not to the trustee under compulsion, but to him personally in compliance with the agreement, as matter of convenience, so that he might deliver the money to their attorney. Respondent's theory and contention is that by accepting the services of the attorney and by paying the amount assessed, the lot owners ratified the new contract made for them by the trustee and the attorney. Yet there is no pleading nor finding that the lot owners even knew of the arbitration. When they paid less than ten dollars a lot they must have known that no collection was being made under the original contract. They are presumed to have known that under the statute the trustee might make a charge for attorney's fees. How could they know, when they paid either with or without protest the amount ''assessed'' by the trustee against their lots, that they were executing a new contract made by arbitrators whom they did not appoint and ratified by those having no authority to act for them? To ask the question answers it.

All of the evidence tends to show that defendant acted at all times under the belief that he was executing the trust imposed upon him by statute. The federal statute (U. S. Rev. Stats., sec. 2387) provides that the state legislature must create machinery for the execution of the trust ''as to the disposal of the lots in such town, and the proceeds of the sales thereof,'' and under the Nevada law Judge Stevens undoubtedly was the trustee for both purposes. There is no support for the finding that the money was paid ''with the understanding that said defendant claimed a lawful right to demand of said lot claimants the sum of $3.45 per lot for the use of plaintiff.'' And we find nothing in the record to support the finding that the defendant ''had full power and authority to receive said collections outside of his duties as trustee and judge as aforesaid.''

The evidence shows that the trustee refused to recognize plaintiff's right to collect ten dollars a lot for his fee. The arbitration was not the making of a new *contract* between the attorney and his alleged clients. It was merely the fixing of an amount which the trustee recognized as a just compensation and which he believed he had the power to assess under the statute. The manner of assessment without segregation

of the items corroborates his own testimony in this regard that he fixed the attorney's fee as trustee, believing that the statute authorized him so to do. He was mistaken in this and collected too great a sum of money. This makes him an involuntary trustee as to the excess, not for plaintiff, but for the inhabitants of Goldfield and South Goldfield. (Civ. Code, sec. 2224.)

This conclusion makes it unnecessary for us to pass upon the contention of appellant that the courts of California have no jurisdiction of the controversy.

The judgment is reversed.

Wilbur, J., and Lorigan, J., concurred.

Hearing in Bank denied.