[No. 1954]

## THE STATE OF NEVADA, EX REL. RACHEL SCHLOSS, PETITIONER, *v.* THERON STEVENS, RESPONDENT.

1. PROHIBITION—NATURE AND GROUNDS—ACT OF PUBLIC OFFICER—TOWNSITE TRUSTEE.

   Under Comp. Laws, 346, providing that, if all the lots in a townsite are not legally conveyed to the proper owners within one year after they have been passed upon by the district judge as townsite trustee, or in case of contest, within thirty days after the contest shall have been finally determined, they shall be sold to the highest bidders, prohibition is a proper remedy to prevent the sale of the lots where the failure to legally convey to the proper owners is due to the imposition of excessive charges by the townsite trustee as a condition precedent thereto.

2. PROHIBITION — NATURE AND GROUND — EXISTENCE OF OTHER REMEDY.

   Where a townsite trustee on the refusal of a lot claimant to pay excessive charges imposed proceeds to sell the lot, there is no other adequate remedy affecting the right to the remedy by writ of prohibition; individual suits to settle the rights of the claimant not being an adequate remedy.

ORIGINAL PROCEEDING. Application by the State, on the relation of Rachel Schloss, for writ of prohibition against Theron Stevens. **Granted.**

The facts sufficiently appear in the opinion.

*James T. Redington*, for Petitioner.

*Detch & Carney*, for Respondent.

*Per Curiam:*

This is an original proceeding in prohibition. The proceeding grows out of a state of facts, some of which are identical with those involved in the *mandamus* case against the same respondent (No. 1953; 34 Nev. 128.) The petitioner alleges that she made application for two certain lots to the respondent as trustee of the Goldfield townsite, which application was allowed, but that the amount assessed against said lots by the trustee was $17. Believing that said amount was largely illegal and excessive, and being so advised, she refused to pay

such amount, and the deed remains undelivered.    On the 30th day of December, 1910, the trustee advertised petitioner's lots, together with others, for sale, the sale to be by public auction on the 1st day of February, 1911.    It is to prohibit a sale in pursuance of this notice that this proceeding was instituted.    At the time the petition was filed, this court issued a restraining order suspending further proceedings under the advertisement for sale until this proceeding was determined.    Respondent has filed a motion to quash the proceedings and a demurrer to the petition, both going to the same question—whether prohibition is an appropriate remedy.

Section 8 of the act approved February 20, 1869, as amended March 5, 1877 (Comp. Laws, 346), reads in part as follows:    "If all the lots, blocks, shares, or parcels of such land are not legally conveyed to the proper owners before the expiration of one year after the same shall have been passed upon by the corporate authorities or judge, or, in case of contest, within thirty days after such contest shall have been finally determined, the same shall be sold to the highest bidder, and the proceeds applied to the erection of public buildings for the benefit of such city or town, or to the construction of water-works for the purpose of conveying water into such city or town, after paying their proportionate share of the purchase money and other expenses incurred by publication and sale."    The respondent is proceeding to sell under the provisions of section 8, *supra*.    As we stated in the *mandamus* case, the petitioner here is not in a position to question the regularity of the original notice to claimants of lots, and hence cannot base any alleged irregularity in that notice as a ground of attack upon the validity of the notice of sale under section 8, *supra*.

Whether this is an appropriate case for the issuance of the writ of prohibition presents a question upon which the court has found some difficulty in reaching a conclusion.    The case is *sui generis*.    The respondent became trustee by virtue of his office as district judge under the provisions of the federal and state statutes governing the

acquisition of townsites and the disposition of lots therein to the settlers.   In his capacity as said trustee the judge performs certain duties that are purely executive or ministerial, while others are in their nature judicial or *quasi-*judicial, in that he exercises a discretion in determining the reasonableness of certain charges, within certain fixed limitations, which he is authorized to impose.   While counsel for the petitioner herein has sought to place a broader construction on the case of *Jennett* v. *Stevens,* 33 Nev. 527, decided by this court in December last, than is warranted by a reading of that opinion, we did hold that the trustee's colleague upon the district bench was without jurisdiction to compel him by *mandamus* to issue his deed in that particular case, for the reason that, as he was townsite trustee by virtue of his office as district judge, he was not an inferior officer within the purview of a writ of *mandamus.*

In that case we regarded the determination of the amount which the trustee was entitled to impose as an exercise of a duty judicial in character.   Whether or not he went beyond the limitations of the statute was not a matter which his colleague on the bench could determine by a proceeding in *mandamus,* for the reason that the law of *mandamus* does not regard a person performing a duty or trust by virtue of his office as a judge as inferior to another judge of equal judicial power, though the former is not acting strictly in his capacity as judge.

The constitution of this state gives this court the power to issue writs of prohibition.   There are no statutory provisions now in force regulating its exercise.   It is an ancient common-law writ, and whatever functions it had at common law this court now possesses.   This court in a number of cases has had occasion to issue the writ to inferior courts, and has not before had occasion to consider whether more extensive powers may be exercised under it.   The general rules governing the issuance of the writ have been often stated by this court and need not be repeated here, but in every instance where this court

has heretofore had occasion to issue the writ it has been to an inferior court.

High, in his work on Extraordinary Legal Remedies, in section 762, says: "The writ of prohibition may be defined as an extraordinary judicial writ, issuing out of a court of superior jurisdiction and directed to an inferior court, for the purpose of preventing the inferior tribunal from usurping a jurisdiction with which it is not legally vested."

In section 764a the same author says: "The appropriate function of the remedy is to restrain the exercise of unauthorized judicial or *quasi*-judicial power, which is regarded as a contempt of the state or sovereign, and which may result in injury to the state or to its citizens. Three conditions are necessary to warrant the granting of the relief: First, that the court officer, or person against whom it is sought is about to exercise judicial or *quasi*-judicial power; second, that the exercise of such power is unauthorized by law; third, that it will result in injury for which no other adequate remedy exists. And the remedy may be invoked against any body of persons or officers assuming to exercise judicial or *quasi*-judicial powers, although not strictly or technically a court."

While the great function of the writ of prohibition is to restrain courts and judicial tribunals from exceeding their jurisdiction, and most of the cases where the writ has issued are of this character, nevertheless the writ has not been restricted exclusively to such class of cases, but it has run to other officers exercising or attempting to exercise judicial or *quasi*-judicial functions beyond their powers, where no other adequate remedy existed. Examples of cases of the latter character may be found in the following authorities:

In New York the writ was held to be properly issued to restrain a mayor from hearing and determining charges preferred against a police or fire commissioner. (*People* v. *Sherman,* 66 App. Div. 231, 72 N. Y. Supp. 718; same case on appeal, 171 N. Y. 684, 64 N. E. 1124.)

The writ has been issued in Alabama requiring a judge

not to hear or determine a writ of *habeas corpus* (*Re John Williams*, 150 Ala. 489, 43 South. 490, 10 L. R. A. 1129, 124 Am. St. Rep. 79); in Maine, restraining a board of county commissioners from appointing an agent to open a way laid out by them (*Harriman* v. *County Commissioners*, 53 Me. 83); in Wisconsin, to prevent a court commissioner from exceeding his jurisdiction (*Potter* v. *Frohbach*, 133 Wis. 1, 112 N. W. 1087); in Michigan, to prevent a common council from proceeding to remove a city counselor (*Speed* v. *Common Council*, 98 Mich. 360, 57 N. W. 406, 22 L. R. A. 842, 39 Am. St. Rep. 555); in Massachusetts, to prevent a board of county commissioners from determining damages for taking land for a passenger station (*Railroad Company* v. *County Commissioners*, 127 Mass. 50, 34 Am. Rep. 338); and, in Kentucky (*Thomas* v. *Thompson*, 102 S. W. 849), it was held that the writ of prohibition was the proper one to restrain a city council from acting for the purpose of removing a chief of police.

That the common-law writ of prohibition is not confined exclusively to courts or judicial tribunals was held to be the law by the constitutional court of South Carolina in the early case of *State* v. *Commissioner of Roads*, 1 Mill. Const. 55, decided in 1817, and reported, with elaborate note, in 12 Am. Dec. 597. From that decision we quote the following: "Thus it would seem, if we pursue these principles that the courts have authority by this proceeding to supervise the execution of the laws, not merely by keeping inferior tribunals within their proper jurisdiction, but also by enforcing a correct execution of the laws, as well the common as the statute law. To the generality of this rule there will, of course, be exceptions pointed out by the nature and object of this proceeding. If, then, the authority of these courts be thus extensive, and such be the objects of this proceeding, what reason can there be to limit its operation merely to the regulation of inferior courts? Why should it not extend to other public functionaries who are charged with the execution of the laws, and to corporate bodies whose existence and whose privileges are an

emanation of the sovereign authority? Accordingly we do find the writ of prohibition directed to persons, whose character and functions had little or nothing of a judicial nature about them. Thus, prohibition has been a common remedy to restrain the excess or abuse of visitatorial authority in cases of eleemosynary corporations. (1 Woodeson, 472, 473, 479. 484.) There is, it is true, in the duty of the visitors of these institutions a power to determine in some cases on the rights of individuals in relation to the corporation of which they are visitors, but they do this more in the character of private trustees than as public judges. They are appointed by the founders, or their authority results to them as the heirs of the founders. (1 Woodeson, 474.) It is impossible to imagine a tribunal less resembling those which have been usually and properly denominated courts than would be the forum, if so we may be permitted to speak, of a visitor of one of these institutions. Less of the judicial characters, or a more shadowy resemblance of judicial functions, cannot be conceived to exist, yet they are usually restrained by proceedings in prohibition, when they exceed or abuse their authority. From this example alone, and the cases which establish it are numerous, it will appear that prohibitions are not exclusively directed to courts, and that, if judicial functions in those to whom they are directed be necessary at all, as their foundation, they need not be very extensive, or very strongly marked. But I am of opinion that in our habit of thinking on this subject we have mistaken the derivative for the original. The origin of this proceeding, as we have seen from the authorities quoted, was to secure the sovereign rights, and preserve the public quiet. It was an emanation of the great executive authority of the king, delegated to his courts, and particularly to the king's bench (1 Bl. Com. 481–482), one of his prerogative writs, necessary to perfect the administration of his justice, and the control of subordinate functionaries and authorities. By the writ of *mandamus* he commanded what ought to be done, and by the writ of prohibition he forbade what

ought not to be done, in cases where the general authority was not denied, or not intended to be resumed."

In *State* v. *Young*, 29 Minn. 474, 523, 9 N. W. 737, 738, the court, considering a similar question, said: "The writ of prohibition issues usually to courts to keep them within the limits of their jurisdiction. But it may also issue to an officer to prevent the unlawful exercise of judicial or *quasi*-judicial power; and, the other reasons for it existing, we see none why it should not issue to a person or body of persons not being in law a court, nor strictly officers. * * * Three things are essential to justify the writ: First, that the court, officer, or person is about to exercise judicial or *quasi*-judicial power; second, that the exercise of such power by such court, officer, or person is unauthorized by law; third, that it will result in injury for which there is no other adequate remedy."

In the case under consideration, which as before stated is *sui generis*, the trustee will sell, unless prevented by some procedure, the lots of petitioner, and others similarly situated, at public auction under the provisions of section 8, *supra*. If permitted, this sale of the lots, to which petitioner is entitled upon paying the legal charge, will take place because of the fact that respondent has demanded therefor an amount of money in excess of his power to impose. The law invests the trustee with power to sell lots which are not legally conveyed to the proper owners before the expiration of one year after the same shall have been passed upon by the judge. Deeds to the lots in question have been made out, and have not been delivered because of an excessive charge of the trustee, beyond his power to impose. The law will regard that as done which ought to have been done, and will hold that the failure to deliver the deeds does not bring the lots in question strictly within the provisions of section 8, *supra*, so as to cut off the privilege of the lot claimant from paying the maximum charge which the trustee might impose at any time prior to sale. The respondent ought not to be permitted to sell the lots of petitioner and others similarly situated so long as they stand ready to pay such maximum amount.

There is no other adequate remedy in a case of this kind, unless we concede a multitude of suits to settle the rights of individual claimants an adequate remedy, which we do not so consider, especially in view of the public nature of the matter.

As we held in the *mandamus* case, $5.50 is the maximum charge which the trustee can lawfully impose for the first lot under the provisions of section 7 of the act of 1869, *supra,* and section 5 of the supplementary act of 1871, *supra.* For additional lots this charge is reduced by $2 under the provisions of said section 7, so that the maximum charge against an individual purchaser of more than one lot is $5.50 for the first lot and $3.50 for each additional lot. Petitioner herein was, and is therefore, entitled to the trustee's deed for the two lots described in the petition upon paying the petitioner the sum of $9. We think it justly due the trustee to say that in making the charges he did he acted as he believed the statute warranted, and that his construction of the same resulted only from an honest difference of opinion, and not from any desire to impose an excessive charge. These cases are of public advantage, in that they have afforded an opportunity to settle the construction of provisions of the statute in which there has been no little conflict of opinion.

It is ordered that the writ issue prohibiting respondent from selling petitioner's lots, or the lots of any other claimant similarly situated and who regularly filed a claim for a lot or lots with the respondent, provided she or they pay or offer to pay to respondent the sum of $5.50 for a single lot, and at the rate of $3.50 for additional lots included in same deed, so claimed at any time prior to the day hereafter to be fixed by respondent for the sale of unconveyed lots, and, provided further, that the date of the sale of all other lots at public auction be made not less than ten days from the date of service of the writ or a copy of this order, and that, subject to the provisions of this order, the temporary restraining order heretofore made be and the same is hereby vacated.