THE GLADYS BAKER OLSEN FAMILY TRUST, BY AND THROUGH ITS TRUSTEE, GLADYS BAKER OLSEN, PETITIONER, *v.* THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, AND THE HONORABLE FRANCES-ANN FINE, DISTRICT JUDGE, RESPONDENTS, AND BETTY L. OLSEN AND ALFRED G. OLSEN, REAL PARTIES IN INTEREST.

No. 24760

May 24, 1994                                       874 P.2d 778

*Edwards & Kolesar, Chtd.* and *Dan R. Waite,* Las Vegas, for Petitioner.

*Pearson & Patton,* Las Vegas; *Becker, Hunt & Hess,* Portland, Oregon, for Real Party in Interest Betty Olsen.

*Alfred G. Olsen,* In Proper Person, Las Vegas, for Real Party in Interest.

## OPINION

*Per Curiam:*

### BACKGROUND

The underlying action arises from a divorce proceeding in Oregon. In 1985, real party in interest Betty L. Olsen (Betty) obtained a divorce decree from her former husband, real party in interest Alfred G. Olsen (Al). The Olsens had been married for approximately thirty-four years. Pursuant to the decree of divorce, Al was ordered to pay Betty $38,094.81, plus spousal support in the amount of $1,500.00 per month for as long as Betty lived. To date, however, Betty has been unsuccessful in satisfying her judgment against Al.

In 1988, petitioner Gladys Baker Olsen[1] created a revocable trust, The Gladys Baker Olsen Family Trust (the Trust), and established herself as the trustee and sole life beneficiary. The Trust was initially funded with two pieces of Oregon real property, capital reserve certificates, debentures, bonds, a bank

---

[1]Gladys is the 100-year-old mother of Al.

account and over 21,000 shares of various stock; assets whose aggregate value exceeded $2,000,000.00. The Trust agreement originally provided that upon Gladys' death, Valley Bank of Nevada becomes successor trustee and Al becomes sole beneficiary. Any distributions from the Trust to Al, however, are subject to: (1) the successor trustee's discretion, and (2) an express spendthrift provision precluding Al's creditors from anticipating the Trust assets before they are distributed to him. In short, while Gladys is living, Al has nothing more than an expectancy.[2]

In April, 1991, the Trust paid cash for a condominium home located at 341 Mill Hollow Road, Las Vegas, Nevada (the condo) and Al was allowed to live there rent free. At her deposition, Gladys stated that she derived great comfort and satisfaction from this purchase because Al had been living in a small trailer that had inadequate air conditioning. Moreover, Al's monthly income of $650.00, derived solely from social security and veteran benefits, did not allow him to live in anything better.

In August, 1992, Al borrowed $23,701.00 from the Trust to purchase a 1993 Mercury Grand Marquis. In exchange, the Trust received Al's promissory note and a security interest in the vehicle.

On February 12, 1993, Betty obtained a writ of execution on the condo. She contended that the Trust was being used as a shield to prevent her from obtaining satisfaction of her judgments against Al. Conversely, Al maintained that, although he lived in the condo, he was neither the legal nor equitable owner of the property. Consequently, Al filed a motion to determine the issue of exemption.[3] When Betty and Al appeared for the hearing on this motion, the district court informed the parties that it needed to have an evidentiary hearing. That hearing was scheduled for arguments on May 24, 1993. During the interim, Gladys' deposition was taken and she steadfastly maintained that the condo was hers.

Several days before the scheduled evidentiary hearing, Betty moved to have Al held in contempt of court for failing to pay spousal support. The district court consolidated that matter with

[2]On January 22, 1993, the Trust was amended to name Gladys Baker Olsen Holdings, Inc. as successor trustee. Gladys owns all the stock in this corporation. The district court concluded that the change of successor trustee was intended to place Al in the position of trustee through the use of an elaborate parent/subsidiary corporation scheme.

[3]Public records indicate that the Trust is the owner of the condo and that Al was never in the chain of title; the condo passed directly from the developer to the Trust.

the evidentiary hearing set for May 24, 1993. On that morning, Al contacted his attorney, Dan Waite, and stated that he was in Arizona and would not be present in court. As a result, Attorney Waite moved the district court to withdraw as Al's counsel and that motion was granted.

Then, without going forward with the evidentiary hearing, the district court held Al in contempt of court and ordered him imprisoned, until

> he comes up with the money that the Court and/or Mrs. [Betty] Olsen finds to be reasonable under the circumstances, [only then] he'll get out.

In short, the district court was very upset with Al and asserted its displeasure. It was in this context that the district court, without taking any evidence, held that Betty could satisfy her judgment against Al by executing upon the Trust assets. In doing so, the district court declared:

> I don't believe there's a need for further testimony based on the actions of Mr. Alfred Olsen. In fleeing the jurisdiction, and I do find him to have fled the jurisdiction, it is clear to this Court that he has been less than truthful and candid regarding his assets and his interests in the Gladys Baker Olsen trust. Therefore, based on equity, the Court is invading the corpus of the trust and granting to Plaintiff, Betty Olsen, the home located at Mill Hollow and the [Mercury Grand Marquis]. [Al] has exercised undue influence in the creation and the maintenance of that trust throughout its life and his present action reinforces this proposition. The Court finds that [Al] essentially held this property in trust for [Betty] and we could, I guess, assume or call it a constructive trust.

On June 2, 1993, the district court issued a written order that went beyond its oral order of May 24, 1993. Besides allowing execution upon the Trust's assets, the written order also: (1) ordered the removal of Gladys as trustee from her own trust; (2) rejected the successor trustee which Gladys had selected; (3) ordered the law firm of Edwards & Kolesar, Chtd., (counsel) to select a new trustee; (4) declared the spendthrift provision in the Trust agreement void as against public policy; (5) ordered counsel to redraft the trust agreement in a manner which eliminated all spendthrift provisions to Al; (6) declared Gladys in breach of her fiduciary duties for allowing the Trust to purchase the condo and for lending Al money to purchase the 1993 Grand Marquis; (7) invalidated the Trust's promissory note and security interest in the 1993 Grand Marquis; (8) froze all the assets of the Trust so

that they could not be sold; and (9) transferred title to the condo and 1993 Grand Marquis to Betty.

Ultimately, in response to that order, the Trust filed this petition for a writ of prohibition.

## DISCUSSION

### Nature of the remedy

A writ of prohibition may issue to arrest the proceedings of a district court exercising its judicial functions when such proceedings are in excess of the jurisdiction of the district court. NRS 34.320; *see also* Cunningham v. District Court, 102 Nev. 551, 729 P.2d 1328 (1986). A writ of prohibition does not serve to correct errors; its purpose is to prevent courts from transcending the limits of their jurisdiction in the exercise of judicial but not ministerial power. Low v. Crown Point Mining Co., 2 Nev. 75 (1866) (cited in O'Brien v. Trousdale, 41 Nev. 90, 167 P. 1007 (1917)). Its object is to restrain inferior courts from acting without authority of law in cases where wrong, damage and injustice are likely to follow from such action. Silver Peak Mines v. Second Judicial District Court, 33 Nev. 97, 110 P. 503 (1910). A writ of prohibition may issue only where there is no plain, speedy, and adequate remedy at law. NRS 34.330; State ex rel. Schloss v. Stevens, 34 Nev. 146, 116 P. 605 (1911).

### Intervention

The Trust's key argument supporting its petition for writ of prohibition is direct and simple: the Trust was never made party to the action before the district court, therefore the district court did not have jurisdiction to issue orders and judgments against it. Conversely, Betty argues that even though the Trust was not a party to the underlying action, it is bound by the district court's judgment because legal counsel for Al and the Trust is one and the same; therefore, the Trust had notice that its interest could be affected and it should have intervened pursuant to NRCP 24(a)(2).

This court rejected a similar proposition in Bowler v. Leonard, 70 Nev. 370, 269 P.2d 833 (1954), where it held:

> "The law does not impose upon any person absolutely entitled to a hearing and burden of voluntary intervention in a suit to which he is a stranger. . . . Unless duly summoned to appear in a legal proceeding, a person not a privy may rest assured that a judgment recovered therein will not affect his legal rights."

*Bowler,* 70 Nev. at 381, 269 P.2d at 838 (quoting Chase National Bank v. City of Norwalk, 291 U.S. 431, 441 (1934)).

Furthermore, this court's decision in *Bowler* is supported by the United States Supreme Court's subsequent decision in Martin v. Wilks, 490 U.S. 755 (1988). In *Martin,* the petitioner argued that respondents were bound by a decision rendered in an earlier action on the basis that respondents were aware of the earlier litigation and failed to intervene. The United States Supreme Court rejected petitioner's argument when it held that a party seeking a judgment binding on another cannot obligate that person to intervene; he must be joined:

> Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree. The parties to a lawsuit presumably know better than anyone else the nature and scope of relief sought in the action, and at whose expense such relief might be granted. It makes sense, therefore, to place on them a burden of bringing in additional parties where such a step is indicated, rather than placing on potential additional parties a duty to intervene when they acquire knowledge of the lawsuit.

*Id.* at 765 (footnote omitted); *accord* Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 684 (7th Cir. 1992) (nonparty not bound by decision even though it was aware of litigation which could affect its interests and even though the nonparty responded to discovery requests by the parties). Thus, it is well settled that joinder rather than knowledge of a lawsuit and opportunity to intervene is the method by which potential parties are subjected to the jurisdiction of the court.

Moreover, since the early case of Robinson v. Kind, 23 Nev. 330, 47 P. 977 (1897), this court has required that all persons materially interested in the subject matter of the suit be made parties so that there is a complete decree to bind them all. If the interest of absent parties may be affected or bound by the decree, they must be brought before the court or it will not proceed to decree. *Id.* at 335, 47 P. at 978. Consistent with these principles, NRCP 19(a) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an

interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest . . . .

More recently, this court has held that a party must be joined under NRCP 19(a) if he claims an interest in the subject matter of the action. Lewis v. Smart, 96 Nev. 846, 849, 619 P.2d 1212, 1213 (1980). In Schwob v. Hemsath, 98 Nev. 293, 646 P.2d 1212 (1982), this court held that a corporation was an indispensable party where it held legal title to real property in controversy and that failure to join the coporation was fatal to a judgment regarding that property. *Id.* at 294, 646 P.2d at 1214. Further, this court held that failure to join an indispensable party may be raised by the appellate court sua sponte. *Id.*

In the instant case, the Trust has legal title to, and claims absolute ownership of, all Trust assets which are the subject matter of the action in the lower court. Pursuant to NRCP 19(a) and this court's holdings in *Robinson, Lewis,* and *Schwob,* Betty was required to join the Trust as a party. Therefore, we conclude that Betty's failure to join the Trust as a party is fatal to the district court's judgment.

Further, we conclude that the order of the district court is void. Accordingly, we grant this petition. The clerk of this court shall forthwith issue a writ of prohibition precluding the district court from enforcing its void order and from issuing any orders affecting the rights of the Trust until it is properly joined as a party.