## 131 Nev., Advance Opinion 51
IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| MARK ANDERSON,<br>Appellant,<br>vs.<br>SOPHIA SANCHEZ,<br>Respondent. | No. 62059 |

**FILED**

JUL 23 2015



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court divorce decree. Fifth Judicial District Court, Nye County; Kimberly A. Wanker, Judge.

*Reversed and remanded with instructions.*

Abrams Law Firm, LLC, and Vincent Mayo, Las Vegas,
for Appellant.

Law Office of Daniel Marks and Daniel Marks and Christopher L. Marchand, Las Vegas,
for Respondent.

BEFORE GIBBONS, C.J., TAO and SILVER, JJ.

*OPINION*

By the Court, GIBBONS, C.J.:

This case involves the enforceability of a divorce settlement agreement in the face of a claim that the agreement distributes property belonging to a third party. At issue here is the district court's denial of appellant's motion to set aside the parties' settlement agreement, and join his sister to the underlying divorce proceeding, because she claimed an

interest in property that was treated as community property in the settlement agreement. Under NRCP 19(a), a court must join a person to an action if complete relief cannot be accorded among the parties already present, or the person to be joined claims to have an interest in the subject matter of the action, and adjudication of the action in the person's absence may either impair the person's ability to protect that interest, or leave any of the current parties subject to double, multiple, or otherwise inconsistent obligations due to the claimed interest.

In light of this rule and the facts in this case, we conclude the district court should have conducted an evidentiary hearing to decide the joinder issues before the court adjudicated the parties' property pursuant to the settlement agreement. We therefore vacate the district court's divorce decree only as it affects the disposition of the property at issue and remand this matter to the district court with instructions to conduct an evidentiary hearing to determine whether the sister should have been joined under NRCP 19(a).

## BACKGROUND

This appeal arises out of a divorce between appellant Mark Anderson and respondent Sophia Sanchez. Mark filed a complaint for divorce in March 2012. Thereafter, the parties immediately agreed to participate in mediation before retired district court judge Robert Gaston, but not pursuant to a court order or district court rule, which can be used to set the parameters of the mediation. At the conclusion of the mediation, the parties executed a written Memorandum of Understanding (MOU), which provided the framework for dividing their various assets and debts. The award of the Wilson property, a residence located on East Wilson

Avenue, Orange, California, is the only term of the MOU challenged on appeal. Under the terms of the MOU, Mark was to receive the Wilson property in exchange for the payment of a portion of his retirement funds to Sophia.

After the parties executed the MOU, Mark filed a notice of withdrawal of his signature, stating, without any explanation or citation to law, that he was revoking his signature from the MOU. In response, Sophia filed a motion to enforce the MOU, asserting that the parties had entered into a legally binding contract and requesting that the district court enter a divorce decree based on the terms of the MOU. Mark then filed, among other things, an opposition to the motion to enforce, a countermotion to set aside and deem the MOU unenforceable, and a countermotion for joinder of his sister, Cheryl Parr. Cheryl also filed a motion to intervene in the divorce proceeding based on the same factual allegations set forth in Mark's opposition and countermotion regarding joinder, and she asked for a finding and order that the Wilson property was held in constructive trust, declaratory relief, an injunction, and attorney fees.

In his opposition and countermotions, Mark argued, as relevant here, that the MOU was void because it improperly distributed property that did not belong to Mark and Sophia. Further, Mark argued the MOU was subject to rescission because it was based on a mutual mistake, a misrepresentation, or unconscionable terms. In support of these arguments, Mark alleged Cheryl had an ownership interest in the Wilson property, which he and Cheryl had received as beneficiaries of the Jack and Lavonne Anderson Trust (the Jack and Lavonne Trust), which

previously held that property. Mark claimed he and Cheryl had agreed Cheryl would keep the Wilson property in exchange for Mark receiving other trust assets. Cheryl currently lives on the Wilson property.

Continuing his arguments in support of joinder and setting aside the MOU, Mark alleged that, between May 2005 and May 2006, he and Sophia entered into two agreements with Cheryl in which Cheryl allowed them to use the Wilson property as collateral to secure loans. In order to obtain financing, the second agreement required Mark and Cheryl, as trustees of the Jack and Lavonne Trust, to convey the Wilson property to Mark and Sophia. Mark and Sophia then transferred the Wilson property to their own newly created trust, the Anderson Trust. The Anderson Trust provides that the Wilson property is to be conveyed to Cheryl should she survive both Mark and Sophia. Additionally, David Parr, Cheryl's son, is named as a beneficiary of the Anderson Trust, should he survive Cheryl, Mark, and Sophia. The Anderson Trust was not made a party in this case. None of Mark and Sophia's five other properties are held in a trust.

Mark contended he and Sophia entered into an oral agreement with Cheryl whereby he and Sophia would transfer the Wilson property to Cheryl after all loans were satisfied. Until such time, however, Mark and Sophia would hold the Wilson property in the trust for Cheryl's benefit. Thus, in his opposition and countermotions, Mark argued the agreement created a resulting trust or a constructive trust for Cheryl's benefit.

Mark filed several statements in district court by individuals familiar with the arrangement to prove the oral agreements. These included an affidavit signed by Mark and Sophia's accountant, who

provided a loan collateralized by the Wilson property; a letter signed by the trust attorney who drafted the Anderson Trust, which recited his understanding that the property was held in Mark's name, but was actually owned by Cheryl; a notarized statement signed by Israel Sanchez, Sophia's brother, which outlined his understanding of Mark and Sophia's arrangement with Cheryl, consistent with Mark's contentions; and the Anderson Trust agreement, which held the Wilson property at the time of divorce and which provided that the Wilson property would go to Cheryl free of encumbrances following the deaths of both Sophia and Mark if she survived them. Based on his contention that Cheryl was the true owner of the Wilson property, Mark maintained that Cheryl must be joined to the action pursuant to the provisions of NRCP 19(a).

Sophia filed a reply in support of her motion to enforce the settlement agreement and an opposition to Mark's countermotions. She denied the existence of an agreement between herself, Mark, and Cheryl, referring to the alleged agreement as "a secret deal between [Mark] and his sister." Sophia contended she and Mark were the rightful owners of the Wilson property, as they, not Cheryl, paid the mortgage and property taxes on the Wilson property and because a quitclaim deed released the property to Mark and Sophia forever.

The district court held two hearings on the various motions. In rendering its decisions, the district court stated at the hearings, "I don't know how Cheryl [Parr] would—could become a party in this case. We're talking about a piece of property in California, so we don't—we don't have jurisdiction over a property in California. She's not a party to this proceeding. This is a divorce." Second, the district court stated, "[a]

settlement was reached. . . . It was placed in writing. And now what I hear is that somehow that—that really there was this constructive trust regarding this California property that [i]s the problem. Those facts were known to [Mark]. Those facts were known to [Sophia]." Third, the district court emphasized the importance that "[Mark and Sophia are] legal owners of the property."

After the second hearing, the district court issued an order that (1) granted Sophia's motion to enforce the MOU, (2) denied all of Mark's countermotions, and (3) denied Cheryl's motion to intervene and related motions. In addition to concluding the MOU was a valid and binding agreement, the district court found that Cheryl lacked standing to intervene and that the court lacked jurisdiction to allow her to intervene.[1] The court also entered a decree of divorce dissolving Mark and Sophia's marriage and incorporating the MOU. This appeal by Mark followed.

## ANALYSIS

Mark maintains that the arrangement with Cheryl created an implied trust for Cheryl's benefit. Therefore, he asserts that when he and Sophia divided the Wilson property as part of their community property, they mistakenly included property that belonged to Cheryl. Thus, Mark

---

[1]Cheryl was never made a party to the district court action and is thus not a party to this appeal. Moreover, because Cheryl did not file a petition for a writ of mandamus challenging the denial of her motion to intervene, the denial of that motion is not before us. Nevertheless, the district court's comments in this regard are equally relevant to the denial of Mark's joinder motion as they were to the denial of Cheryl's motion to intervene.



contends that the MOU should be set aside as to that provision and the matter should be remanded to the district court for further proceedings in which Cheryl's interest in the Wilson property is determined. Sophia disagrees, arguing that the parties entered into an enforceable settlement agreement and that joinder of Cheryl was not required.

This court reviews de novo a district court's legal conclusions relating to court rules. *Casey v. Wells Fargo Bank, N.A.*, 128 Nev. ___, ___, 290 P.3d 265, 267 (2012). Subject matter jurisdiction is similarly reviewed de novo. *Ogawa v. Ogawa*, 125 Nev. 660, 667, 221 P.3d 699, 704 (2009).

Generally, when parties to a divorce have entered into a signed, written settlement agreement, such agreement is binding and "can be enforced by motion in the case being settled." *Grisham v. Grisham*, 128 Nev. ___, ___, 289 P.3d 230, 233 (2012). Nevertheless, in order to render a complete decree in any civil action, "all persons materially interested in the subject matter of the suit [must] be made parties so that there is a complete decree to bind them all." *Gladys Baker Olsen Family Trust ex rel. Olsen v. Eighth Judicial Dist. Court*, 110 Nev. 548, 553, 874 P.2d 778, 781 (1994). For that reason, the Nevada Supreme Court has held that the failure to join a necessary party to a case was "fatal to the district court's judgment." *Id.* at 554, 874 P.2d at 782. In light of this authority, we conclude that, if Cheryl was a necessary party, the district court's judgment was invalid to the extent that it affected rights in property in which Cheryl claimed an interest. *See id.* Thus, we begin by considering Mark's argument that the district court erred by denying his motion to join Cheryl in the underlying action.

*Joinder of necessary parties*

Although NRCP 19(a) refers to parties who are to be joined if feasible, a person who falls within that subsection of the rule is generally referred to as a "necessary party." *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 878 (9th Cir. 2004) (explaining that an individual who should be joined under the analogous federal rule, FRCP 19(a), is "referred to as a 'necessary party'"); *see also Blaine Equip. Co., Inc. v. State*, 122 Nev. 860, 864 n.6, 138 P.3d 820, 822 n.6 (2006) (referring to a party who should be joined under NRCP 19(a) as a necessary party). There are three types of circumstances in which an absent party is necessary under NRCP 19(a): (1) an individual must be joined if the failure to join will prevent the existing parties from obtaining complete relief; (2) an individual must be joined if an interest is claimed in the subject matter of the action and adjudication of the action in the individual's absence may inhibit the individual's ability to protect that claimed interest; and (3) an individual must be joined if the person claims an interest in the subject matter of the action and adjudication of the action in the individual's absence subjects an existing party "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." *See* NRCP 19(a).[2]

---

[2]NRCP 19(a) provides that, if a person is subject to service of process and that person's joinder will not deprive the court of subject matter jurisdiction, then the person "shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the
*continued on next page...*

Without addressing whether this case presented any of the circumstances set forth in NRCP 19(a), the district court declined to join Cheryl, apparently based on two preliminary conclusions—that the court lacked jurisdiction to determine Cheryl's rights in property located in another state and that an outside party could not be joined to a divorce action. We now address each of these conclusions in turn.

*Jurisdiction over the Wilson property*

Although the district court failed to make specific factual findings, its oral comments indicate that it concluded it lacked jurisdiction to adjudicate the ownership rights to the Wilson property because the property is located outside of Nevada. To that end, the written order recites, "Ms. Parr's remedy lies in a different jurisdiction, this Court does not have jurisdiction to allow her to intervene into this matter."

A court of equity, however, may adjudicate out-of-state property rights in a divorce action. *Buaas v. Buaas*, 62 Nev. 232, 236, 147 P.2d 495, 496 (1944). In *Buass*, the former wife appealed a divorce decree obtained in Nevada, alleging that the Nevada court lacked jurisdiction to adjudicate the status of real property located in California. *Id.* at 234, 147 P.2d at 496. The Nevada Supreme Court held that, although the lower court could not render a judgment in rem over the California property, it could pass indirectly upon the title via its jurisdiction over the parties. *Id.* at 236, 147 P.2d at 496; *see also Lewis v. Lewis*, 71 Nev. 301, 306, 289 P.2d

---

*...continued*

person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."

414, 417 (1955) (stating that a district court possesses control over an out-of-state property through jurisdiction over the parties and that the district court can exercise such control to avoid multiplicity of suits).

Here, Mark and Sophia were properly before the district court in their divorce proceeding and included the Wilson property among the assets to be divided. Further, Cheryl submitted to the district court's jurisdiction by filing a motion to intervene in the divorce proceeding.[3] Thus, although the Wilson property was located in California, the district court could have adjudicated the parties' rights to the property based on its personal jurisdiction over all of the parties purporting to have an interest in the property. *See Buass*, 62 Nev. at 236, 147 P.2d at 496. Consequently, the district court erred in concluding it lacked jurisdiction to consider Cheryl's interest in the Wilson property based on the property's location. We now turn to the court's other apparent conclusion, that it could not join a third party to a divorce action.

*Joinder in a divorce action*

In addition to the district court's conclusions relating to the location of the property, the district court's comments and written order suggest the court found it would be improper to join or allow intervention by a third party to a divorce action. We disagree.

Nothing in NRCP 19(a) limits the type of civil action to which a necessary party must be joined. And although the Nevada Supreme Court has not specifically addressed whether a third party may be joined

---

[3]Therefore NRCP 19(b), regarding an absent but indispensable third party that could not be feasibly joined, is inapplicable.

to a divorce action, that court has held that joinder was required in certain post-divorce proceedings. *See, e.g., Johnson v. Johnson*, 93 Nev. 655, 659, 572 P.2d 925, 927 (1977) (holding that an order requiring an absent third party to transfer property was void because the absent third-party transferee was not joined in the post-divorce action); *Olsen Family Trust*, 110 Nev. at 554, 874 P.2d at 782 (holding that a trust created by a third party was a necessary party to a post-divorce action in which the district court ordered trust property to be transferred to the appellant to satisfy spousal support arrearages). Thus, Nevada case law supports the possibility that an absent third party may be joined to a family law action in certain circumstances.

Moreover, courts in other jurisdictions have concluded that a third party may be joined to a divorce proceeding when such joinder is necessary to resolve disputes as to property rights. For instance, in *Cadwell v. Cadwell*, 178 P.2d 266, 267 (Kan. 1947), the district court had allowed the wife's mother to intervene in the parties' divorce action because she had claimed to be the true owner of certain real and personal property held by the husband and wife.[4] On appeal, the court noted that, generally, "a third person has no legal interest in or right to interfere with a divorce action for the purpose of opposing the granting of a decree of

---

[4]Several of the cases discussed herein consider the issue of bringing third parties into divorce cases based on the third party's motion to intervene. *See, e.g., Cadwell*, 178 P.2d at 267-69. Although joinder, rather than intervention, is at issue in this appeal, these cases are relevant to the consideration of whether the third party may properly be made a party to a divorce action. Whether a party is necessary, such that joinder is required, is discussed separately below.

divorce." *Id.* at 268. Nevertheless, the court recognized that, when the third person seeks to intervene based on a claim of a right to property held by the divorcing parties, courts have typically held that intervention for such a purpose is proper. *Id.* at 268-69.

Similarly, in *Wharff v. Wharff*, 56 N.W.2d 1, 2 (Iowa 1952), a divorcing wife alleged that real property titled in the parties' names was actually purchased with her separate money and was "held in trust for her children by a previous marriage." On this basis, the children moved to intervene in the divorce to assert their interest in the property. *Id.* Concluding that intervention in divorce cases was typically subject to the ordinary rules of civil procedure, the *Wharff* court noted that intervention is generally proper when a third person "claims an interest in property involved in litigation." *Id.* at 3-4. The court recognized that allowing intervention would help avoid a multiplicity of suits and the possibility that the division of property in a divorce might be rendered inequitable if property divided in the divorce is later awarded to the third person in a separate action. *Id.* at 4.

These cases represent the majority view that a third person may be joined as a party to a divorce action based on a claimed interest in real or personal property that is to be divided among the divorcing parties. *See also Copeland v. Copeland*, 616 S.W.2d 773, 775 (Ark. Ct. App. 1981) ("Third parties may be brought into, or intervene in, divorce actions for the purpose of clearing or determining the rights of the spouses in specific properties."); *Gaudio v. Gaudio*, 580 A.2d 1212, 1217 (Conn. App. Ct. 1990) ("The prevailing view in the majority of other jurisdictions is that a third person with a claimed interest in property that is the subject of a

(O) 1947B

dissolution action may properly be joined as a party."); *Lancaster v. Lancaster*, 291 S.W.2d 303, 308 (Tex. 1956) ("On a petition for divorce and for partition of the community property, all persons who have an interest in the property are proper parties.").

Thus, considering this extrajurisdictional authority in light of the Nevada Supreme Court cases indicating that joinder may be proper in family law cases, we conclude that a third person may be joined to a divorce action when that person claims an interest in property that is purported to be part of the marital estate. As a result, the district court erred to the extent that it apparently found that Cheryl could not be joined because the underlying action was a divorce action.

But having determined that Cheryl *could have been joined* in the underlying divorce action does not end our inquiry because Mark did not move for joinder of Cheryl until after he signed the MOU. Generally, when parties to a divorce have entered into a signed, written settlement agreement, such agreement is binding and "can be enforced by motion in the case being settled." *Grisham*, 128 Nev. at ___, 289 P.3d at 233. Mark attempts to avoid the binding effect of the agreement by arguing both that Cheryl was a necessary party under NRCP 19(a) and that the MOU was subject to being set aside based on the parties' mutual mistake as to the nature of Cheryl's interest in the Wilson property. We address these arguments in turn.

*Necessary party*

As noted above, in order to render a complete decree in any civil action, "all persons materially interested in the subject matter of the suit [must] be made parties so that there is a complete decree to bind them

all." *Olsen Family Trust*, 110 Nev. at 553, 874 P.2d at 781. For this reason, the Nevada Supreme Court has held that the failure to join a necessary party to a case was "fatal to the district court's judgment." *Id.* at 554, 874 P.2d at 782; *see also Univ. of Nev. v. Tarkanian*, 95 Nev. 389, 396, 594 P.2d 1159, 1163 (1979) (explaining that "the question of waiver is not appropriate to the determination of [a joinder] issue, and the trial court or the appellate court may raise the issue *sua sponte*"). Thus, if Cheryl was a necessary party, the district court's judgment was invalid to the extent it resolved any issues for which Cheryl's joinder was necessary. *See Tarkanian*, 95 Nev. at 396, 594 P.2d at 1163.

As discussed above, NRCP 19(a) requires joinder in three situations—when the failure to join the individual will prevent the parties to the case from obtaining complete relief, when the individual claims an interest in the subject matter of the action and adjudication in the individual's absence may inhibit the ability to protect that claimed interest, and when the individual claims an interest in the subject matter of the action and adjudication in the individual's absence potentially subjects an existing party to "double, multiple, or otherwise inconsistent obligations." In applying NRCP 19(a), the Nevada Supreme Court has broadly indicated that a third party must be joined if the third party's interest "may be affected or bound by the decree," or if the third party "claims an interest in the subject matter of the action." *Olsen Family Trust*, 110 Nev. at 553-54, 874 P.2d at 781-82.

Generally, the subject matter of a divorce action will involve the division of the parties' property, but may not necessarily require the court to determine title to the property or otherwise establish ownership.

*See Aniballi v. Aniballi*, 842 P.2d 342, 343 (Mont. 1992) (noting that "a decree of dissolution resolves rights to the marital property as between the parties seeking dissolution of the marriage, but will not determine title *in rem*"). Instead, the parties may simply divide their interest in the property, leaving any interests of third parties undisturbed. *See id.; see also Walters v. Walters*, 113 S.W.3d 214, 219 (Mo. Ct. App. 2003) (recognizing that the trial court did not need to determine the relative interests of a couple and the husband's mother in property being divided in a divorce proceeding, but could properly divide only the couple's interest by awarding "'[a]ny interest the parties may have'" in the property).

Nevertheless, in some cases, such as this one, the parties may dispute the extent of their interest in the property, putting ownership of the property at issue in the divorce proceeding. *See Callnon v. Callnon*, 46 P.2d 988, 990 (Cal. Ct. App. 1935) (recognizing that parties to a divorce "may seek a determination of their property rights"). As discussed above, in that situation, a third party who claims an interest in the property generally may be joined to the action and the action will be binding on that party. *See id.* Conversely, any third party not joined will not be bound by the determination of ownership in the divorce action. *See Johnson*, 93 Nev. at 658, 572 P.2d at 927 (recognizing that a third party would not be legally bound by an order entered in an action to which the third party had not been joined).

Here, insofar as Cheryl will not be bound by the action if she is not joined, it does not appear that her ability to protect her claimed interest in the Wilson property would be impaired or impeded, as she will be able to file a separate action to enforce her claimed interest. *See*

*Aniballi*, 842 P.2d at 343 (noting that a parent who claimed an interest in the parties' marital residence would not be prevented by the divorce decree from bringing a separate action to determine the interest in the property). Indeed, Sophia asserted in her appellate brief that Cheryl has filed a lawsuit in Orange County, California, against Mark and Sophia.

As a result, Cheryl does not appear to be a necessary party under NRCP 19(a)(2)(i), which requires joinder when a third party claims an interest in the subject matter of the action and the third party's absence from the litigation may impair or impede the person's ability to protect that interest. But that ability to file a separate action raises questions as to whether, in Cheryl's absence, the existing parties will be able to obtain complete relief, and whether the failure to join Cheryl may leave Mark "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations," and thus, whether Cheryl may be a necessary party under NRCP 19(a)(1) or NRCP 19(a)(2)(ii). *See Tarkanian*, 95 Nev. at 397-98, 594 P.2d at 1164 (concluding that complete relief could not be afforded among existing parties where resolution in the absence of a third party would not "completely and justly" determine the rights and obligations presented by the action); *see also* NRCP 1 (providing that the rules of civil procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action").

Because the district court erroneously determined that it did not have authority to join Cheryl based on the location of the Wilson property and the nature of the action as a divorce proceeding, the court failed to consider whether complete relief could be afforded among the parties in Cheryl's absence, or whether Cheryl's absence might leave any

of the existing parties subject to a substantial risk of double, multiple, or otherwise inconsistent obligations. But insofar as Cheryl may seek relief in another jurisdiction with regard to the Wilson property, it appears reasonably possible that her absence may cause any relief afforded in the district court to be incomplete, or may leave Mark subject to a potential risk of multiple, double, or inconsistent obligations. *See* NRCP 19(a)(1), (a)(2)(ii).

Determining the potential effect of any litigation by Cheryl may require the resolution of factual issues. Therefore, we reverse the district court's denial of joinder and remand this case to the district court for that court to consider whether Cheryl was a necessary party within the meaning of NRCP 19(a). *See Ryan's Express Transp. Servs., Inc. v. Amador Stage Lines, Inc.*, 128 Nev. ___, ___, 279 P.3d 166, 172 (2012) ("An appellate court is not particularly well-suited to make factual determinations in the first instance."); *see also Nev. Power Co. v. Fluor Ill.*, 108 Nev. 638, 645, 837 P.2d 1354, 1359 (1992) (recognizing that an evidentiary hearing may be necessary in order to properly decide disputed questions of fact).

If the district court determines that Cheryl is a necessary party, the court must then determine the relative rights of Mark, Sophia, and Cheryl in the Wilson property, *see Callnon*, 46 P.2d at 990, and must revisit the portions of the MOU concerning that property, as appropriate. In the event the district court does not find the circumstances to fall within the parameters of NRCP 19(a), Mark contends the MOU may still be set aside based on mutual mistake. Thus, in the final section of this opinion, we turn to his mutual mistake argument.

*Mutual mistake*

Mark argues the district court erred by failing to set aside the MOU based on mutual mistake and other contract defenses. Sophia, on the other hand, contends the MOU was properly upheld because no mutual mistake occurred. A contract may be set aside based on mutual mistake, which "occurs when both parties, at the time of contracting, share a misconception about a vital fact upon which they based their bargain." *Gen. Motors v. Jackson*, 111 Nev. 1026, 1032, 900 P.2d 345, 349 (1995); *see also May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005) (providing that a settlement agreement is a contract that is governed by contract law).

In the divorce decree, the district court found "good cause" to adopt the MOU over Mark's objections. And in a related order, the court concluded that Mark and Sophia had entered into a valid and binding agreement pursuant to *Casentini v. Hines*, 97 Nev. 186, 625 P.2d 1174 (1981), which recognizes that a stipulation is enforceable if it is in writing and signed by the party against whom enforcement is sought. The district court did not, however, specifically address Mark's mutual mistake argument by making findings as to whether the MOU was based on the parties' "misconception about a vital fact." *See Gen. Motors*, 111 Nev. at 1032, 900 P.2d at 349.

In particular, although the district court generally stated at the hearing on the motion to set aside the MOU that certain facts were known to the parties at the time they entered into the agreement, nothing in the record indicates that the court considered Mark's contentions regarding his and Sophia's understanding of their respective rights as to

the Wilson property, and the effect of that understanding on their decision to execute the MOU. *See id.* Thus, the district court erred by concluding the MOU was enforceable without properly addressing Mark's mutual mistake argument. Because determining the understanding of the parties when they entered into the MOU will require the resolution of factual issues, we also reverse those portions of the district court's orders that denied Mark's motion to set aside the MOU based on mutual mistake. *See Ryan's Express*, 128 Nev. at ___, 279 P.3d at 172.

If the district court concludes that Cheryl is a necessary party, it may not be necessary for the court to revisit the mutual mistake and other related arguments. But if the district court finds Cheryl is not a necessary party, the court must address the mutual mistake and other contract defense arguments to determine whether Mark has demonstrated grounds under general contract law for setting aside the MOU.[5]

---

[5]If the court concludes that Cheryl was not a necessary party and that no contractual basis for setting aside the MOU exists, then Mark waived his argument that Cheryl should have been joined as a permissive party under NRCP 20 by entering into a binding settlement agreement that distributed the parties' interests in the Wilson property without seeking joinder of Cheryl. *See McKellar v. McKellar*, 110 Nev. 200, 202, 871 P.2d 296, 297 (1994) (explaining that a waiver may be implied from "conduct which evidences an intention to waive a right, or by conduct which is inconsistent with any other intention than to waive a right"); *see also Nev. Gold & Casinos, Inc. v. Am. Heritage, Inc.*, 121 Nev. 84, 89, 110 P.3d 481, 484 (2005) ("Waiver is generally a question of fact. But when the determination rests on the legal implications of essentially uncontested facts, then it may be determined as a matter of law." (citations omitted)). Thus, we do not address Mark's NRCP 20 arguments further in this opinion.

## CONCLUSION

Because the district court improperly determined that it did not have jurisdiction to join Cheryl to a divorce proceeding involving out-of-state property, we reverse the district court's denial of joinder and remand this matter to the district court for that court to consider whether Cheryl is a necessary party within the meaning of NRCP 19(a). If the court determines Cheryl is a necessary party under that rule, the court must then consider what interest, if any, Cheryl has in the Wilson property and must revisit the portions of the MOU relating to that property, as appropriate. If the district court does not find Cheryl to be a necessary party, then the court must consider Mark's mutual mistake and other contract arguments to determine whether the MOU must be set aside on a contract basis, and conduct any further proceedings as necessary. The parties do not challenge any other aspect of the divorce decree. As a result, we affirm the status of the parties as divorced.

_____, C.J.
Gibbons

We concur:

_____, J.
Tao

_____, J.
Silver